**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LESTER OMAR REYES TORRES,**<br><br>Petitioner,<br><br>v.<br><br>**MARKWAYNE MULLIN**, United States Secretary of Homeland Security, *et al.*,<br><br>Respondents. | **CIVIL ACTION**<br><br>**NO. 26-7439-KSM** |

**MEMORANDUM**

**MARSTON, J.** **OCTOBER 15, 2026**

The Executive Branch of the United States Federal Government is *entrusted* with significant power and authority. What that means in theory is that the Executive Branch's ability to act is cabined to authority vested in it by the Constitution and laws passed by the people's representatives in Congress. *See* U.S. Const., Art. II. What that means in practice is that when the Executive Branch acts, whether on the street or in court, it must comply with the law and Constitution and—at a *bare* minimum—show its work. Here, instead, the Court has been confronted with a United States Immigration and Customs Enforcement ("ICE") agency policy that limits fulsome judicial review[1] and an Assistant United States Attorney who stood up in

[1] To be abundantly clear, the Court is **extremely troubled** by the representations of Respondents' counsel at oral argument that (1) Respondents have a policy to not provide body camera footage—even to their counsel—absent a court order and (2) because of this policy, counsel had not reviewed the footage prior to oral argument on the Petition. (*See* Doc. Nos. 8, 9.) Here, this policy led directly to a waste of judicial resources and made it impossible for counsel on both sides to comprehensively advocate on behalf of their clients. If and when there are similar Section 2241 cases before this Court where the initial arrest was warrantless, Respondents should be prepared to promptly produce all relevant body camera footage to the Court and Petitioner's counsel.

open court and claimed that Government agents in this country can, with unbounded authority, restrain a person's liberty without the possibility of a habeas remedy.[2] (*See* Doc. No. 8.)

It was only after this Court held oral argument and *sua sponte* ordered the body camera footage of Petitioner's arrest that we were able to accurately and completely evaluate Petitioner's habeas claim. (Doc. No. 7, 8.) And upon review and consideration of the Petition (Doc. No. 1), the Respondents' Response (Doc. No. 4), Petitioner's Reply (Doc. No. 6), oral argument on the Petition held on October 7, 2026, and October 8, 2026 (Doc. Nos. 8, 9), and the body camera footage of Petitioner's arrest on September 23, 2026 (*see* Doc. No. 7), we find the agents here acted in accordance with their statutory and constitutional authority. Accordingly, Petitioner Lester Omar Reyes Torres's Petition for a Writ of Habeas Corpus (Doc. No. 1) will be denied.

## I. FACTUAL BACKGROUND

Petitioner is a citizen of Guatemala who entered the United States without inspection approximately six years ago. (Doc. No. 1-3; Doc. No. 4; Body Camera #4, at 10:46:29–34.) Prior to the September 23, 2026 incident at issue here, Petitioner had never had any interactions with United States Customs and Border Protection, United States Department of Homeland Security, or ICE. (*See* Body Camera #4, at 10:46:41–50.) Based on the Form I-213 for Petitioner submitted by Respondents, Petitioner works in New Jersey in repair operations and does not have any direct familial ties to the United States. (Doc. No. 4-2 at 3.) Petitioner also

---

[2] The Court must emphasize that we are **<u>deeply disturbed</u>** by Respondents' counsel's position at the October 7, 2026 oral argument. In sum and substance, counsel argued that agents of the Executive Branch "can just go around and talk to anybody they want to talk to and then determine they are illegal and just arrest them" *without any statutory or constitutional authority whatsoever*. (10/7/26 Hr'g Rough Tr. 15:25–16:02.) Not only is this position legally incorrect, *see United States v. Brignoni-Ponce*, 422 U.S. 873 (1975), when taken to its logical conclusion, it claims—without a shred of support—that we have "transformed our country into a police state and abandoned one of the fundamental tenets of our free society," *Capua v. City of Plainfield*, 643 F. Supp. 1507 (D.N.J. 1986). Counsel must not forget that a fundamental mandate of the Executive's role is to "take Care that the Laws be faithfully executed." U.S. Const., Art. II, § 3. Carte blanche authority to ICE agents is a far cry from that mandate.

does not have either a pending application for a work authorization nor an approved work authorization. (*See* Body Camera #4, at 10:47:06–20.)

Around 10:45 a.m. the morning of September 23, 2026, at least four ICE agents were conducting a "targeted enforcement action in an attempt to locate"[3] Petitioner and stopped Petitioner's vehicle on Allentown Road in Lansdale, Pennsylvania. (Doc. No. 4-2 at 3.) The agents then approached Petitioner's vehicle and began interrogating him. (Body Camera #4, at 10:45:50–56.) They requested identification, and Petitioner provided a New Jersey Probationary Auto License. (*Id.* at 10:45:56–07.) The agents asked where Petitioner was from and if he had further ID, at which point Petitioner stated he was from Guatemala and provided a Guatemalan ID. (*Id.* at 10:46:09–23.) Petitioner was then asked if he was legally or illegally in the United States, and he stated he was illegally in the United States. (*Id.* at 10:46:24–30.) Petitioner also stated he had no pending court date with an immigration judge and had never been arrested by either immigration officials or police. (*Id.* at 10:46:31–42.) At that point, ICE asked for and took possession of Petitioner's keys and arrested him. (*Id.* at 10:46:55–47:30.)

At some time after Petitioner was detained, but on the same day, ICE issued an administrative warrant for Petitioner's arrest. (Doc. No. 4-3.) And slightly less than two hours after his arrest, Petitioner was also served with a Notice to Appear in Immigration Court and a Notice of Custody Determination. (Doc. Nos. 4-1, 4-4.) The Notice to Appear charged Petitioner with a violation of Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") and set a hearing for October 5, 2026. (Doc. No. 4-1.) The Notice of Custody

---

[3] At oral argument, Respondents' counsel was unable to explain what a "targeted enforcement action" means generally or as applied to this action. (*See* 10/7/26 Hr'g Rough Tr. at 13:13–14:06.) But, from the Court's independent review of the body camera footage here, we do not see any support for the idea that the ICE agents were looking specifically for Petitioner on the morning of September 23, 2026.

Determination states that SSDO[4] Clark determined at 1:26 p.m. on September 23, 2026, that Petitioner would be detained "pending a final administrative determination in [his] case." (Doc. No. 4-4 at 1.) Petitioner requested review of SSDO Clark's custody determination by an immigration judge. (*Id.* ("I **do** request an immigration judge review of this custody determination.") (emphasis in original).) And Petitioner has a custody redetermination hearing in front of an immigration judge today at 1:30 p.m.[5] (Doc. No. 4-5.) Since his arrest, Petitioner has been detained at the Federal Detention Center in Philadelphia.[6] (*See* Doc. No. 1-3.)

## II. PROCEDURAL HISTORY

On September 25, 2026, Petitioner filed the instant Petition, in which he argues that habeas relief is warranted because his initial arrest and continued detention are in violation of the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act ("APA"). (*See generally* Doc. No. 1.) Respondents filed a response in opposition (Doc. No. 4), arguing that the Court should deny habeas relief because: (1) Petitioner is lawfully detained under 8 U.S.C. § 1226(a) and he has not exhausted his administrative remedies; (2) any claim that his initial arrest was unlawful is not cognizable through habeas; and (3) his due process claims fail

---

[4] The Court understands this to stand for "Supervisory Detention and Deportation Officer".

[5] The Court also recognizes this Memorandum and its accompanying Order may not be issued in time for Petitioner to attend his hearing today. If that is the case, and especially in light of the factual and procedural history of this action, we **expect** Respondents to **promptly** reschedule his bond hearing to the next available date. *See Zheng v. Rokosky*, 826 F. Supp. 3d 545, 554 (D.N.J. 2026) ("Respondents must also provide detainees with a 'prompt bond hearing.'") (quoting *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018)); *see also Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings ***at the outset of detention***.") (emphasis added).

[6] Upon receipt and review of the Petition on September 25, 2026, this Court issued an Order enjoining Respondents from moving Petitioner from the Eastern District of Pennsylvania pending the outcome of this action. (Doc. No. 2.)

because he is properly detained under Section 1226(a). (*Id.*)[7] Petitioner filed a reply which argued that this action is factually and legally similar to two other recent actions in this District where the court granted habeas relief because the initial arrest of the petitioners did not comply with ICE's warrantless arrest statute, 8 U.S.C. § 1357(a), Section 1357's implementing regulations, or due process of law. (*See* Doc. No. 6 (citing *Tabora-Brizuela v. Mullin*, No. 26cv7010, 2026 WL 2908095 (E.D. Pa. Sept. 28, 2026); *Alameda Juarez v. Mullin*, No. 26cv7008, 2026 WL 2981947 (E.D. Pa. Oct. 5, 2026)).) Over the course of two days, the Court then held oral argument on the Petition (Doc. Nos. 8, 9), and in between, ordered the production of and reviewed the body camera footage of Petitioner's September 23, 2026 arrest (Doc. No. 7). The Petition is thus ripe for resolution.

## III. LEGAL STANDARDS

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Under that provision, a federal district court is authorized to grant a writ of habeas corpus to a petitioner who is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). The petitioner carries the burden of showing his detention violates the Constitution or federal law. *Id.* § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

Under the Due Process Clause of the Fifth Amendment to the U.S. Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including

[7] Strangely, the Response did not address Petitioner's APA claim. (*See generally* Doc. No. 4.) Nevertheless, the Court finds that Petitioner has not met his burden of showing Respondents' actions in this case were arbitrary, capricious, or an abuse of discretion. As discussed *infra*, the Court finds that the ICE agents here complied with the statutory requirements of 8 U.S.C. §§ 1357(a) and 1226(a) and their implementing regulations. Thus, to the extent Petitioner's APA claim is cognizable on habeas, it necessarily fails.

[noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

## IV. DISCUSSION

On the record before this Court, Petitioner has not met his burden under Section 2241. He has not shown any clear or unambiguous violation of his statutory or constitutional rights, nor has he shown that Respondents' procedures are so inadequate that they will cause irreparable injury. But before the Court addresses the merits of Petitioner's claims, we must clarify the scope of the dispute here.

As a preliminary matter, Petitioner's argument that his unlawful detention flows from an unlawful arrest pursuant to Section 1357 was only raised for the first time on reply. (*Compare* Doc. No. 1, *with* Doc. No. 6.) Then at oral argument on October 7, 2026, Respondents' counsel claimed their "main argument" was that Petitioner's improper arrest theory under Section 1357 "is just not a proper habeas argument." (10/7/26 Hr'g Rough Tr. at 13:01–02.) And, incredulously, counsel argued that it was Respondents' position that "the arrest [did not meet] the standard of [Section] 1357" and counsel did not "know the exact answer why [the ICE agents] did not have a warrant." (*Id.* at 12:14–15, 13:21–22.) But counsel also made clear that he had not, at that time, reviewed the body camera footage from Petitioner's arrest due to ICE's policy, discussed in footnote 1 *supra*. (*Id.* at 4:10–14, 8:08–18.) So, the Court orally ordered that the body camera footage be produced, and oral argument was continued to October 8, 2026. (*See* Doc. Nos. 7–9.)

At oral argument on October 8, 2026, Respondents' counsel changed positions and argued that the body camera footage showed that the arrest actually did comply with Section 1357, and thus, Petitioner was lawfully arrested and detained without a warrant. (*See* Doc. No. 9.) Petitioner's counsel argued that the footage still fails to provide any insight into whether the "targeted enforcement action" that led to the agents pulling Petitioner over was supported by probable cause, so Respondents still had not met their burden under Section 1357.[8]

Generally, "this Court is not required to consider legal arguments raised for the first time on reply." *Lopez Cruz v. Jamison*, No. 26cv2278, 2026 WL 1257329, at *6 (E.D. Pa. May 7, 2026); *see also Calderon v. Noem*, No. 25cv2136, 2025 WL 3754042, at *4 (W.D. Wash. Dec. 29, 2025) ("It is well-settled that a habeas petitioner cannot amend his petition – much less introduce wholly new claims – in his reply brief.") (cleaned up). And we generally do not consider arguments raised for the first time at oral argument. *See Tomasko v. Iran H. Weinstock,*

---

[8] Petitioner's argument here is, in all but name, a claim that this was an unlawful *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1 (1968). But, to the extent we could even reach that inquiry, it is collateral to the *custody* question before this Court. *See Vakhtangadze v. Jamison*, No. 26cv6630, 2026 WL 2969613, at *7 (E.D. Pa. Oct. 2, 2026) ("The relevant question on habeas review is whether Petitioner is presently in custody in violation of the Constitution or laws or treaties of the United States, and not whether ICE's paperwork could have been more complete at the moment of arrest.'" (quoting *Par v. Jamison*, No. 26cv3504, 2026 WL 1603299, at *4 (E.D. Pa. June 4, 2026) (cleaned up)).

Here, the custody Petitioner challenges only includes his initial arrest pursuant to Section 1357(a)(2) and ongoing detention pursuant to Section 1226(a), not any brief detention during the initial investigatory stop pursuant to Section 1357(a)(1). *See Babula v. Immigr. & Naturalization Serv.*, 665 F.2d 293, 298 (3d Cir. 1981) ("We hold that under section 1357(a)(2) and section 287.3, 'arrest' means an arrest upon probable cause, and not simply a detention for purposes of interrogation."). As a preliminary matter, Petitioner has waived any challenge to his initial stop. (*See* 10/7/26 Hr'g Rough Tr. 3:25–4:01.) And even if the propriety of that stop was cognizable here, Petitioner may need to exhaust his remedies as to that issue before an immigration judge at his removal proceedings. *See Oliva-Ramos v. Att'y Gen. of U.S.*, 694 F.3d 259, 275 (3d Cir. 2012) ("Accordingly, we reiterate today that the exclusionary rule may apply in removal proceedings where an alien shows 'egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained.'") (quoting *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1051 (1984)). Therefore, such a *Terry* stop claim is thus not properly before this Court on habeas. *Cf. Stone v. Powell*, 428 U.S. 465, 466 (1976) (holding that a state prisoner may not be granted habeas relief on Fourth Amendment grounds when they had an opportunity to bring that claim in state court).

*P.C.*, 357 F. App'x 472, 479 (3d Cir. 2009) (finding that "the specific objections that Weinstock raised for the first time at oral argument in the District Court have been waived"); *In re Corio*, 371 F. App'x 352, 355 (3d Cir. 2010) (finding that the bankruptcy court did not abuse its discretion when it refused to consider an argument raised for the first time during oral argument). But, considering the instant action has novel underlying facts and legal arguments, and the fact that material evidence—the body camera footage—was only produced in the middle of oral argument, the Court will consider the arguments made for the first time on reply or at oral argument.

And when considering the full scope of evidence and argument before this Court, we find that the Petition must be denied. As Petitioner challenges both his initial arrest and his current detention, we will analyze them sequentially. *First*, we find that Respondents did not violate 8 U.S.C. § 1357(a) when they arrested Petitioner.[9] *Second*, because Petitioner's arrest and detention is statutorily proper, we find that Petitioner must exhaust his due process claims before an immigration judge.

### A. Petitioner's Initial Detention Under Section 1357 Was Lawful

The INA provides that "[o]n a warrant issued by the Attorney General, [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). But ICE agents also have some authority to act without a warrant. *See* 8 U.S.C. § 1357(a). Section 1357(a) provides them with the "power without warrant—(1) to interrogate any alien or person believed to be an alien as to his right to

[9] This ruling does not foreclose this Court granting habeas in other factual scenarios where a noncitizen's initial arrest was unlawful. We agree with other judges in this Court that such a claim is cognizable through a § 2241 habeas petition and need not be exhausted. *See, e.g.*, *Tabora-Brizuela*, 2026 WL 2908095, at *2; *Alameda Juarez*, 2026 WL 2981947, at *3; *see also Dos Reis v. McShane*, No. 26cv3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) ("A later bond hearing does not necessarily cure the alleged constitutional violation that preceded it.").

be or to remain in the United States; (2) . . . to arrest any alien in the United States, if [the agent] ***has reason to believe*** that the alien so arrested is in the United States in violation of any such law or regulation ***and*** is likely to escape before a warrant can be obtained for his arrest." *Id.* (emphases added). While the Third Circuit has not ruled directly on what the "reason to believe" standard is in the context of Section 1357(a)(2), other circuits have found it equivalent to a probable cause analysis. *See Lee v. Immigr. & Naturalization Serv.*, 590 F. 2d 497, 500 (3d Cir. 1979); *see also Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1216 (D. Colo. 2025) (collecting non-Third Circuit decisions).

Here, the ICE agents' authority to pull over Petitioner and initially interrogate him under Section 1357(a)(1) is not in dispute. (10/7/26 Hr'g Rough Tr. 3:25–4:01 (Petitioner's counsel stating "I believe [the ICE agents] had the authority to stop and perhaps ask some questions").) And it is clear from the body camera footage that Petitioner, upon very brief initial questioning from the agents, admits he is a citizen of Guatemala who is in the United States illegally. (*See* Body Camera #4, at 10:46:24–30.) The only dispute is the second prong of Section 1357(a)(2): whether the agents believed that Petitioner was likely to escape before a warrant could be obtained. At oral argument, Petitioner's counsel argued that Petitioner was not likely to escape because he was surrounded by four ICE agents and had pulled over to the side of the road. (*See* Doc. No. 9.) We disagree. At the time the officers decided to take Petitioner into custody, i.e., request his keys, order him out of the vehicle, and arrest him (*see* Body Camera #4, at 10:46:58–47:24), Petitioner was in the driver's seat of a truck on a residential street. It would be highly impractical and contrary to the purpose of the statute for the ICE agents to leave the scene, obtain an administrative warrant, and then find Petitioner later—especially as Petitioner is, in his counsel's words "a true earwig, a ghost if you will" who despite entering the country at the

border six years ago had avoided any interactions with DHS or ICE prior to September 23, 2026. (10/7/26 Hr'g Rough Tr. 3:17–18.) So, the Court finds that the ICE agents here had probable cause to believe that Petitioner was in the United States in violation of the immigration laws and that he was likely to escape prior to them obtaining a warrant. Therefore, his initial arrest was lawful under Section 1357(a)(2).[10]

**B. Petitioner's Due Process Challenge to His Current Detention Fails**

Having established that Petitioner was properly arrested under Section 1357(a)(2), we move to whether his continued detention comports with due process. The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

But "[i]n general, [a petitioner] must exhaust administrative remedies before proceeding on a habeas petition brought under § 2241." *Ubaid v. Jamison*, No. 26cv2681, 2026 WL 1346670, at *3 (E.D. Pa. May 14, 2026) (quoting *Pinet v. Holt*, 316 F. App'x 169, 171 (3d Cir. 2009)). "Although there is no statutory exhaustion requirement attached to § 2241, [courts] have consistently applied an exhaustion requirement to claims brought under § 2241." *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000). There are limited exceptions to exhaustion. "Exhaustion is not required if administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the

[10] The Court also notes that, upon review of all four body camera videos here, we commend the ICE agents for their professionalism and empathy. The videos show the agents asking questions in a respectful tone, answering all of Petitioner's questions with useful information, explaining their actions to Petitioner as they were effecting the arrest, and coordinating the safe pickup of Petitioner's truck with a third-party after he was placed in an agent's vehicle for transport.

administrative procedure is clearly shown to be inadequate to prevent irreparable injury." *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988). The Third Circuit has "ruled that these exceptions apply only in extraordinary circumstances." *Republic Indus., Inc. v. Cent. Pa. Teamsters Pension Fund*, 693 F.2d 290, 294 (3d Cir. 1982) (cleaned up).

Here, Petitioner did not exhaust his administrative remedies prior to filing this habeas Petition, and the Court does not find his claims meet any of the exceptions through which exhaustion would be excused. Petitioner is currently detained pursuant to Section 1226(a), which permits ICE to "arrest[ ] and detain[ ] [an alien] pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). This provision and its implementing regulations provide a two-step administrative process by which an alien may request review of a custody determination: (1) the detained noncitizen may request a bond redetermination hearing before an immigration judge; and (2) the noncitizen may appeal the immigration judge's bond decision to the Board of Immigration Appeals. *Ubaid v. Jamison*, No. 26cv2681, 2026 WL 1346670, at *3 (E.D. Pa. May 14, 2026) (citing 8 C.F.R. § 236.1(d)).[11]

Notably, Petitioner does not argue that such an administrative remedy would be futile, as he "request[ed] an immigration judge review of this custody determination" on the day of his detention and such a hearing—at which he will be able to put on evidence regarding his risk of flight and danger to the community—has not yet occurred. (Doc. No. 4-4; *see also Piatukho v. J.L. Jamison*, No. 26cv6413, 2026 WL 2719267, at *4 (E.D. Pa. Sept. 15, 2026) (determining that exhaustion was not futile after Petitioner filed his habeas petition two days after DHS's

[11] In relevant part, Section 236.1(d)(1), (3) states: "(1) *Application to immigration judge.* After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 240 becomes final, request amelioration of the conditions under which he or she may be released. . . . (3) ***Appeal to the Board of Immigration Appeals.*** An appeal relating to bond and custody determinations may be filed to the Board of Immigration Appeals . . . ." (emphasis in original).

initial custody determination) (citing *Ubaid*, 2026 WL 1346670, at *9 ("Speculation that a claim is merely unlikely to prevail in the administrative process based on statistical trends does not make raising that claim futile."))). And, in fact, the Government noticed his custody determination hearing only six days after his initial detention and set it for today, October 15, 2026. (*See* Doc. No. 4-5.) Further, merely because Petitioner asserts a due process claim does not, on its own, mean that exhaustion should be waived. *See Okorafor v. Att'y Gen. of United States*, 787 F. App'x 808, 810 (3d Cir. 2019) ("If the argument, stripped of its due process language, could have been made before and adjudicated by the [Board of Immigration Appeals], then it must be exhausted as any other claim." (citing *Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir. 2005)). Now that the Court has determined that Petitioner's initial arrest was lawful, his due process argument is simply a preview of the argument that he will be able to make at his custody redetermination hearing—that he is not a flight risk or a danger.

And Petitioner has not met his burden to show that Respondents' actions here clearly and unambiguously violate due process such that exhaustion should be waived. 28 U.S.C. § 2241(c)(3); *Johnston*, 312 U.S. at 286. Petitioner does not meaningfully dispute that (1) has been served with a Notice to Appear in Immigration Court (Doc. No. 4-1); (2) he was served with an arrest warrant on September 23, 2026 (Doc. No. 4-3); (3) he illegally entered and has been present in the country for more than six years without ever interacting with DHS or ICE (Doc. No. 4-2); (4) he has no familial ties to the United States (*id.*); and (5) he is subject to President Trump's Executive Order titled, "Protecting the American People Against Invasion" (*id.*). In light of all that, an ICE officer determined that Petitioner would be detained without bond and provided Petitioner with the opportunity to see review of that determination. (Doc. No. 4-4.) All of which complies with the statutory and constitutional process due to a noncitizen

when being initially held in custody in these factual circumstances. *See Demore*, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process."). So, the Court finds that Petitioner has failed to meet his burden to show his current detention violates due process such that exhaustion should be waived. *See Lyons*, 840 F.2d at 205.

## V. CONCLUSION

Petitioner was lawfully arrested under Section 1357(a) and is properly detained under Section 1226(a), so the Petition must be denied so that Petitioner may exhaust his administrative remedies. An appropriate order follows.